**KFC CORPORATION, Plaintiff,**

v.

**Joe T. GOLDEY, et al., Defendants.**

**Civ. A. No. C 88–0655–L(A).**

United States District Court,
W.D. Kentucky,
at Louisville.

June 2, 1989.

Pamela M. Greenwell, KFC Corp., William C. Boone and Culver V. Halliday, Greenebaum Boone Treitz Maggiolo Reisz and Brown, Louisville, Ky., for plaintiff.

David Russell Marshall, Nicholasville, Ky., for Anna Goldey.

Donald L. Cox and Mary Janice Lintner, Lynch Cox Gilman & Mahan, Louisville, Ky., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Senior District Judge.

Plaintiff, KFC Corporation, has moved the Court for a preliminary injunction, enjoining defendant from further infringement for use of KFC's trademark, tradenames or service marks, and from falsely representing herself as an authorized KFC franchisee.

In 1984, defendant, Anna Goldey, and her then husband, Joe T. Goldey, entered into a Franchise Agreement to operate a KFC franchise store at Danville, Kentucky. The agreement provided that the Goldeys were to make monthly royalty payments for their license to use KFC's trademarks, tradenames and service marks, and to operate as a KFC franchisee. The Goldeys failed on thirteen occasions to pay their royalties between March 1985 and October 1986. They received a notice in January 1987 that the franchise was terminated as a result of the failure to pay the royalties.

The Goldeys then requested that KFC reinstate them as franchisees. KFC agreed to reinstate them, subject to the Goldeys' executing three documents. The first of these is entitled Reinstatement Agreement. The second is entitled Termination Agreement, and the third is Kentucky Fried Chicken Franchise Agreement. The Franchise Agreement and Termination Agreement are both dated May 18, 1987, and the Franchise Agreement is dated July 17, 1987. Subsequent to the execution of these documents, Mr. and Mrs. Goldey were divorced in April 1988, and he assigned his interest in the restaurant to her. He was not active in the business after November 1987.

The Reinstatement Agreement provides, in part, that "failure to receive a passing score of 70% on any single operations/facilities review ("OFR") given by KFC would be grounds for immediate termination under the Termination Agreement and the lease." See ¶ 2(c) of the Reinstatement Agreement.

In addition, the Termination Agreement and the Lease stipulated that its terms and conditions would come into effect immediately upon the occurrence of any default by the franchisee of any term or condition of the Reinstatement Agreement, or the Franchise Agreement or any other document which had been executed concurrently with the Termination Agreement.

On May 24, 1988, Karen Miner, a franchise consultant for KFC, inspected the Goldey's restaurant and entered the score

of 69% on the OFR form that she had completed after her inspection of the restaurant. This form was shown to the defendant, and she signed the form, acknowledging that she had seen it and reviewed it.

On June 22, 1988, Ms. Miner wrote the defendant advising her of the seriousness of the situation, and telling her that there would be another OFR conducted after thirty days had passed. The letter pointed out areas in which improvement would be needed. On August 17, 1988, Ms. Miner conducted another OFR. That OFR reflects a score of 63%. Defendant was then notified by letter dated September 2, 1988 that her franchise had been terminated.

Defendant refused to acquiesce in the decision to terminate her franchise and has continued to operate the restaurant as a KFC store without paying any royalties to KFC during the meanwhile. She asserts that KFC is bound by the terms of the Franchise Agreement which provides, in part, that "KFC may terminate the agreement provided that a notice is mailed at least thirty days in advance of the termination date and identifies one or more breaches in the franchisee's performance, specifies the manner in which the breaches or default may be remedied, and the breaches or defaults are not remedied within the thirty days."

The problem with the defendant's argument is that she was on notice, having agreed not only to the Franchise Agreement, but to the Reinstatement Agreement and the Termination Agreement, in consideration of which KFC agreed also to the Franchise Agreement. In view of defendant's repeated defaults on the 1984 agreement, it is certainly a reasonable inference to conclude that KFC would not have entered into the 1987 Franchise Agreement unless it had in its possession both the Reinstatement Agreement and the Termination Agreement.

Defendant contends that Ms. Miner was biased against her because Betty Ann Kaufman, who was one of the lead employees for the defendant, was the daughter of a woman who worked for a competitor of KFC's known as Famous Recipes. She also complains that the OFR reports are unfair because of Ms. Miner's alleged bias and because they might be characterized as subjective, rather than objective. She points out that the new agreement that KFC has reached with franchisees promises in effect that any OFRs which might be performed by KFC will be performed by at least two persons and hence be less subjective.

The Court is of the opinion that these arguments are without legal merit. Prior to the first OFR in 1987, Ms. Miner had been to the facilities and made an inspection and had in fact given defendant a grade of 84. After the May inspection in 1987, defendant made no written complaint to KFC about any unfairness. She also was faced with the fact that two inspections made by the Kentucky Department of Health were not entirely favorable, and that one of them recommended that much attention be given in cleaning up the restaurant.

Defendant also contends that she should be given an opportunity to sell her franchise to one of two people who have expressed an interest in purchasing her restaurant. While it is indeed unfortunate that defendant is no longer in a position to sell the restaurant and the franchise, it would seem that this situation is of her own making. The Court cannot properly intervene and in effect hold the franchise agreement and termination agreement to be of no effect.

Since the plaintiff was entitled to terminate the agreements by reason of the two below 70% OFRs, the legal question that remains is whether or not the plaintiff is entitled to a preliminary injunction. Two cases involving KFC franchisees have both held that a preliminary injunction is properly granted to KFC where a franchisee has violated the terms of the Franchise Agreement. See *KFC v. Hooten*, 216 U.S.P.Q. 967 (E.D.Mich.1982), and *Truglia v. KFC Corp.*, 692 F.Supp. 271 (S.D.N.Y.1988).

Preliminary injunctions are granted where a plaintiff shows a likelihood that it will ultimately prevail on the merits, that there is a substantial threat of irreparable

injury if the preliminary injunction is not granted, that the threatened injury outweighs any threatened harm which the preliminary injunction might cause to the defendant, and that the preliminary injunction would not be adverse to the public interest. *See L.P. Acquisition Co. v. Tyson,* 772 F.2d 201 (6th Cir.1985); *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc.,* 753 F.2d 1354, 1356 (6th Cir.), *cert. dismissed,* 469 U.S. 1200, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985); *Martin–Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 564 (6th Cir.1982).

We consider first the question whether there is a likelihood KFC would prevail on the merits. In light of our findings that the Reinstatement Agreement and Termination Agreement were violated by the defendant, and that the plaintiff had the right to terminate those agreements and the franchise agreement, thereby terminating defendant's franchise, it is obvious that defendant has no right to use the trademarks of KFC. However, she continues to do so and to represent to the public that she is a KFC franchisee. As held in *KFC Corp. v. Hooten,* 216 U.S.P.Q. 967 (E.D.Mich.1982), once a license is terminated, the ex-licensee has no authority to continue to use the licensor's mark and must be enjoined from further use of it. Plaintiff's likelihood of success of the merits is therefore very substantial. *See Professional Golfers Ass'n v. Bankers Life & Casualty Co.,* 514 F.2d 665, 670 (5th Cir. 1975); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology,* 794 F.2d 38, 44–45 (2d Cir.1986).

As to the second criterion, a substantial threat of irreparable harm where a franchisee engaged in unfair competition by continuing to use trademarks after termination of the franchise agreement, "a substantial likelihood of confusion constitutes irreparable injury." *See Seligco Food Corp. v. Atlantic Pocessing, Inc.,* 214 U.S. P.Q. 624, 630 (E.D.N.Y.1981); and *Wendy's International v. Big Bite, Inc.,* 576 F.Supp. 816 (S.D.Ohio 1983). Where the defendant holds herself out as a franchisee, it is obvious that there is a likelihood of confusion on the part of the public. See in this connection *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir. 1982), *cert. denied,* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). The Court then concluded that likelihood of confusion is particularly great with respect to fast food restaurants which are the subject of impulse buying. It is held that when a plaintiff incurs substantial financial expenses in protecting and promoting its trademarks, irreparable harm arises where the defendant is using its resources in such a way as to confuse the public as to believe it is dealing with the plaintiff.

As to the threatened harm to plaintiff compared with the threatened harm to the defendant, the courts have usually held that where the plaintiff is an authorized trademark holder and the defendant is improperly using the trademark, then the threatened harm to the trademark owner outweighs the threatened harm to the defendant. *See Stormor, A Division of Fugua Industries, Inc. v. Johnson,* 587 F.Supp. 275, 280 (W.D.Mich.1984). *See also Bandag Inc. v. Gerrard Tire Co., Inc.,* 212 U.S.P.Q. 461, 463 (W.D.N.C.1980). In connection with the hardships to the defendant, plaintiff points out that it is not asking the Court to enjoin defendant from operating a restaurant or selling fried chicken or any other food products at her restaurant. Finally, the balance of the equities weighs in favor of KFC.

The last question to be considered is whether awarding a preliminary injunction will be adverse to the public interest. The public interest consists in not being confused as to the identity and owner of trademarks and service marks. The use of a mark by a former licensee confuses and defrauds the public. *See Church of Scientology Int'l,* 794 F.2d at 44, and *Professional Golfers Ass'n,* 514 F.2d at 670.

In conclusion, we have determined that the plaintiff is entitled to a preliminary injunction, which will be entered forthwith.

### PRELIMINARY INJUNCTION

The Court having heard the evidence and considered the briefs, exhibits and papers

of record in this action, and having entered its findings of fact, conclusions of law and memorandum opinion, and being fully advised in the premises,

IT IS ORDERED that defendant, Anna Goldey, her employees, agents and all those acting in concert with her, are hereby enjoined as follows:

1. From operating or doing business under any name or in any manner that might tend to give the general public the impression that her license with KFC is still in force, or that she is in any way connected with KFC or authorized to use KFC's trademarks.

2. From making, using, or availing herself of any of the trade secrets, trademarks of, or confidential information imparted by KFC, or disclosing or revealing any such other information or any portion thereof to others.

3. From occupying, constructing, equipping, ordering, or assisting any person or persons in the occupation, construction, or equipping of any premises incorporating the distinctive features or equipment layout which KFC has originated and developed and which are identifying characteristics of premises operated by franchisees of KFC.

4. To return to KFC all Confidential Operating Manuals, together with all other material containing trade secrets, confidential materials, operating instructions, or business practices.

5. To discontinue the use of service marks, trademarks and trade names of KFC and the use of any and all signs, menu board inserts, point-of-sale materials, or printed goods bearing such marks or names or any reference thereto.

6. To renovate or refurbish the outlet sufficiently to eliminate any possibility of confusion in the mind of the public that the outlet is in any manner connected with KFC or any of its licensed Kentucky Fried Chicken outlets. Such renovation may require changing the building interior and exterior color scheme, removing glass, removing light fixtures, and other items.

This order is conditioned upon plaintiff giving security by filing a bond in an appropriate form, which bond need be executed only by the surety in the amount of $5,000 for the payment of such costs and damages as may be suffered or incurred by defendant or any other party who has found to have been wrongfully enjoined or otherwise restrained.