**KFC CORPORATION, Plaintiff,**

v.

**Ole J. LILLEOREN, et al., Defendants.**

**Civ. A. No. C 91–0440–L(A).**

United States District Court,
W.D. Kentucky,
at Louisville.

Jan. 28, 1992.

See also 783 F.Supp. 1022.

Charles J. Cronan, IV, Scot A. Duvall, Stites & Harbison, Louisville, Ky., for plaintiff.

Edgar Zingman, Steve Price, Wyatt, Tarrant & Combs, Louisville, Ky., Todd A. Bradley, Hanna, Spencer, Kerns & Strader, Portland, Or., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action is submitted to the Court on motion by the plaintiff, KFC Corporation ("KFC"), for a preliminary injunction. Fed.R.Civ.P. 65. Based upon the evidence presented at the hearing as well as the memoranda submitted by the parties, KFC's motion will be granted.

KFC, a Delaware corporation with its principal place of business in Louisville, Kentucky, filed this action against Ole J. Lilleoren and Joanne E. Lilleoren and their wholly owned Oregon corporations, Kentucky Fried Chicken of Port Angeles, Inc. ("KFC–Port Angeles"), and KFC of North Bend, Inc. ("KFC–North Bend"). The Lilleorens and both corporations are residents of Oregon. Although the Lilleorens and their corporations have franchise agreements with KFC for eleven KFC restaurants, at issue here are three of these restaurants, which are located in Port Angeles, Washington, in Kelso, Washington, and in North Bend, Oregon.

The Lilleorens have considerable business experience. Mr. Lilleoren is a certified public accountant, who previous to his entry into the franchise business with KFC, spent five years in private practice specializing in tax accounting. In 1963 he became treasurer for Speck Restaurants. Speck owned or acquired some 33 restaurants during Mr. Lilleoren's tenure there.

In 1973 the Lilleorens purchased the Kelso restaurant. As early as 1985, the Lilleorens met with KFC's District Manager, who discussed with them the need for relocating the restaurant. In June 1988 KFC agreed to renew franchises to five of the Lilleorens' KFC restaurants, which then had past-due renewal dates. In return, the Lilleorens agreed to relocate and build a new Kelso restaurant.

In March 1990 the KFC franchise agreement for the Kelso restaurant expired. KFC advised defendants that they could operate under a limited month-to-month agreement until a new franchise agreement was executed. In July 1990 KFC sent the Lilleorens a franchise and renewal agreement extending the franchise on the Kelso restaurant. KFC and the Lilleorens agreed to the relocation of the Kelso restaurant with a "New Image" facility at a new location by March 1, 1991. On July 10, 1990, the defendants received a letter from Alan Comchoc, KFC Franchise Manager for the Lilleorens' district, who advised that the contract on the Kelso restaurant would be renewed only if it had been relocated by the March 1991 deadline. He also reminded them that if the project was not "at least under construction" by the deadline date, they had agreed to close the facility.

On October 1, 1990, the Lilleorens returned the signed Kelso franchise and renewal agreements. On the same date, Mr. Lilleoren wrote to Steve Early, KFC Vice President of the Franchise Contract Administration. Mr. Lilleoren requested approval to continue the Kelso restaurant for one year if they were unable to relocate the facility by the March 1991 deadline. In a letter dated October 31, 1991, Mr. Early denied the request for an extension of the Kelso franchise.

While the defendants contend that an oral agreement was made in a conference in May 1990 extending the Kelso franchise agreement for one year, the Lilleorens' conduct after May 1990 does not reflect any such agreement nor did the parties'

agreements give authority to extend the deadline beyond March 1, 1991.

With reference to the Port Angeles restaurant, the Lilleorens had agreed to sell it by February 15, 1990. On January 8, 1990, they sent Ron Ruefener a copy of a proposed purchase agreement. On February 15, 1990, they sent an executed copy of the sales contract to KFC, whereupon KFC replied that it would review the proposed sales agreement. On July 1, 1990, the Ruefener deal collapsed. Prior to that date, on May 15, 1990, KFC sent to the Lilleorens documents for the renewal of the Port Angeles franchise. The renewal agreement provided for a "Lite & Brite" upgrade of the facility as well as its replacement and repair by December 31, 1990.

The Lilleorens did not return the executed documents until October 1, 1990. Although they had agreed to complete the "Lite & Brite" and other requirements by December 31, 1990, they did nothing to follow up on their obligations even after receiving a notice of default on April 15, 1991.

Among the requirements of the agreement between the parties as to the Port Angeles facility were the Lilleorens' promises that by December 31, 1990, they would replace the Collectramatic cookers and would install logo decals on the windows and upright holding cabinets. However, they never fulfilled any of these requirements. In fact, by the time of the hearing on KFC's motion for a preliminary injunction, they still had not performed these requirements.

In addition, the evidence revealed that the Port Angeles restaurant was not properly maintained. Among the items requiring attention were unrepaired trash receptacles, a window with a bullet hole in it, dirty cushions on the backs of booths, and exterior woodwork needing refinishing.

As to the North Bend restaurant, the Lilleorens had agreed to sell it by May 15, 1990. It appears that in June 1988, they agreed to sell it by October 1989. However, on October 17, 1989, Mr. Lilleoren wrote to KFC expressing his concerns about possible tax consequences of the sale. He also requested an extension of time. KFC granted the request, extending the time to sell the North Bend restaurant to May 15, 1990. When that date arrived, the restaurant had not been sold.

Defendants contend that at the May 1990 meeting KFC gave them an additional extension of time within which to sell the North Bend restaurant. Defendants cannot refer to any written documents reflecting such an extension. Moreover, in Mr. Lilleoren's deposition, he testified that there were no conversations about the North Bend restaurant at the May 1990 meeting.

On July 10, 1991, Alan Comchoc advised the Lilleorens by letter that KFC had extended the time for selling the North Bend restaurant to March 1, 1991. His letter also indicated, "you expressed an interest in possibly keeping this restaurant, therefore, we agree to re-evaluate the decision to have you sell, depending on your progress on the above new commitment dates."

While KFC contends that Comchoc had no authority to extend the date of sale, a serious question of estoppel might have arisen had the Lilleorens complied with the purported new extension date. However, they did not meet the March 1991 deadline nor did they meet another deadline granted by KFC which gave them an additional thirty days to sell the property.

The Lilleorens made little or no effort to sell the North Bend restaurant. They never consulted with or retained a real estate agent. They never advertised the restaurant for sale. In addition, although they chose to rely on word of mouth, they never quoted a price.

Therefore, based upon the evidence, the Court believes it has no alternative but to conclude that the Lilleorens breached material requirements of the franchise agreements for the Kelso, Port Angeles, and North Bend restaurants. As defendants violated the terms of the agreements for the Kelso, Port Angeles, and North Bend restaurants, KFC's termination of those agreements was proper, and defendants

have no right to continue using KFC's trademarks. "[W]here a franchisee engage[s] in unfair competition by continuing to use trademarks after termination of the franchise agreement, 'a substantial likelihood of confusion constitutes irreparable injury.'" *KFC Corp. v. Goldey*, 714 F.Supp. 264, 267 (W.D.Ky.1989) (citations omitted).

> Preliminary injunctions are granted where a plaintiff shows a likelihood that it will ultimately prevail on the merits, that there is a substantial threat of irreparable injury if the preliminary injunction is not granted, that the threatened injury outweighs any threatened harm which the preliminary injunction might cause to the defendant, and that the preliminary injunction would not be adverse to the public interest.

*Id.* at 267 (citations omitted).

KFC has shown by a great preponderance of the evidence that it will ultimately prevail on the merits and that a substantial threat of irreparable injury exists because the public will be confused in buying products sold by the Lilleorens at the Kelso, Port Angeles, and North Bend restaurants under the KFC trademark. The threatened injury of confusion and the wrongful appropriation of trademarks outweighs any threatened harm which a preliminary injunction might cause to the defendants. Likewise, a preliminary injunction is not adverse to the public interest where, as here, the public has an interest in knowing whether the food it purchases under a franchise trademark is sold by a franchisee with the legal right to do so.