Lee LOVERIDGE, Plaintiff-Appellee,

v.

**PENDLETON WOOLEN MILLS, INC.,**
Defendant-Appellant.

**No. 1041, Docket 86–7113.**

United States Court of Appeals,
Second Circuit.

Argued March 19, 1986.

Decided April 25, 1986.

---

James D. Crawford, Philadelphia, Pa. (Nicholas N. Price, and Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on brief), for defendant-appellant.

Arthur M. Wisehart, New York City (Stevin Lim, and Wisehart & Koch, New York City, on brief), for plaintiff-appellee.

Before TIMBERS, MINER and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

Pendleton Woolen Mills, Inc. ("appellant") appeals from an order entered February 11, 1986 in the Southern District of New York, Vincent L. Broderick, District Judge, granting the motion of Lee Loveridge ("appellee") for a preliminary injunction. The court granted the relief requested on the grounds that appellee had demonstrated probable irreparable harm; that there were serious issues going to the merits which were disputed and litigable; and the balance of hardships tipped in appellee's favor.

On appeal, appellant's principal claim is that the court erred in finding irreparable harm because any loss appellee might sustain pending the outcome of the litigation can be redressed by an award of money damages. We hold that, since appellee has an adequate remedy at law, the court abused its discretion in entering a preliminary injunction based on its finding of irreparable harm. We reverse and vacate the injunction.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

In 1976 appellee began working as a sales representative for appellant. Appellant manufactures a line of woolen wearing apparel and accessories, which it markets to retail stores across the country through a staff of approximately 50 sales representatives. Appellant considers its sales representatives to be independent contractors.

Appellee sold womenswear for appellant. His exclusive territory was the New York metropolitan area. He was not a salaried employee. Instead, his compensation was in the form of a commission which appellant paid to him based on a percentage of the dollar value of his sales.

In November and December of 1985, appellee had several disputes with L.M. Bishop, III, appellant's national womenswear sales manager. On November 15, 1985, appellee sent Bishop a memorandum in which he severely criticized Bishop's behavior at a recent sales presentation with one of appellee's customers. Appellee expressed dissatisfaction with Bishop's selling style and told Bishop "to stay away from [his] customers." Bishop gave the memorandum to the manager of appellant's womenswear division, Richard E. Poth, who wrote a response memorandum to appellee dated November 27. In the memorandum Poth informed appellee that if he wished to remain a sales representative he would have to give written assurance that he would support management and adhere to appellant's business policies. Appellee responded to Poth in a memorandum dated December 23. Appellee failed to give the written assurance Poth requested; rather, he repeated his criticism of Bishop's selling skills.

On December 27 and 28, 1985, appellee's deposition was taken in connection with two separate but related antitrust actions which had been commenced against appellant by two other sales representatives.[1] At his deposition, appellee produced a tape recording of a telephone conversation he had had with another sales representative. The conversation made direct reference to the involvement of Bishop in what the two sales representatives (including appellee) regarded as illegal price-fixing activities.

On January 21, 1986, Poth wrote appellee a letter informing him of appellant's decision to terminate his services as a sales representative. The letter told appellee that he was being fired because of his refusal to cooperate with management and his refusal to follow company policies and procedures. Poth sent this letter shortly after the transcripts of appellee's deposition were made available.

On January 27, 1986, appellee filed a complaint in the instant action in the district court alleging an antitrust claim, a breach of contract claim, and an illegal termination claim. With respect to the illegal termination claim, appellee alleged that appellant had fired him in retaliation for his having given adverse deposition testimony. By order to show cause, appellee moved for a temporary restraining order and a preliminary injunction enjoining appellant from interfering with appellee's business as a sales representative. A hearing was held on February 7, 1986 before Judge Broderick. At the conclusion of the hearing, in an oral opinion from the bench, Judge Broderick granted appellee's motion and ordered appellee's immediate reinstatement. A formal order granting the preliminary injunction and denying a stay was entered February 11. On February 18, we entered a stay pending appeal from the preliminary injunction.

## II.

■ For the issuance of a preliminary injunction in this Circuit, the moving party has the burden of showing: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary injunctive relief." *Kaplan v. Board of Education of the City School District of the City of New York,* 759 F.2d 256, 259 (2 Cir.1985). The district court here entered the preliminary injunction upon findings of irreparable harm, of sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tipped decidedly in appellee's favor. Appellant's principal claim on appeal is that the court abused its discretion in finding irreparable harm because appellee has an adequate remedy at law, i.e., money damages.[2] We agree.

The court's finding of irreparable harm was based on its subordinate finding that appellee functioned, in certain respects, more like an independent businessman than an employee. The court reasoned that, since appellant considered its sales representatives to be independent contractors, appellee's situation was more analogous to a dealership threatened with the destruction of its business than to an employee faced with the termination of his job. While we recognize that on occasion we have been willing to enjoin a manufacturer from canceling a dealership pending the outcome of litigation, in order to prevent the destruction of an ongoing business, *Roso-Lino Beverages Distributors, Inc. v.*

---

**1.** Three antitrust actions, including one commenced by appellee, are pending presently against appellant. Appellee was deposed in *Donahue v. Pendleton Woolen Mills, Inc.,* 84 Civ. 7149 (S.D.N.Y.), and *Fallis v. Pendleton Woolen Mills, Inc.,* C–1–85–1361 (S.D.Ohio).

**2.** *Appellant also claims that the district court invoked too lenient a standard for proving ir-* reparable harm, and that the court abused its discretion in finding that the balance of hardships tipped in appellee's favor. Since we hold that the court abused its discretion in finding irreparable harm, it is neither necessary nor appropriate for us to reach the merits of appellant's other claims.

*Coca-Cola Bottling Co. of New York, Inc.,* 749 F.2d 124, 125–26 (2 Cir.1984); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2 Cir.1970), we decline to do so on the facts of this case.

Appellee's relationship with appellant is significantly different from the relationship between a retail dealership and a manufacturer. Appellee, in contrast to a dealership, owns no inventory. Appellant ships all the merchandise ordered directly to the accounts, and the accounts remit their payments directly to appellant. Appellant then pays appellee a commission based on a dollar percentage of the sales. This is a substantially different situation from that of a dealership that purchases inventory from the manufacturer and invests considerable money in a show room, factory or warehouse.[3] Similarly, appellee never owned any accounts receivable. All the accounts receivable belonged to appellant.

Further, appellee hired only two permanent employees—his wife and a secretary. This can hardly be compared to a dealership that hires several dozen employees in order to service the needs of its customers. For example, an auto dealer is required to hire a staff of mechanics as well as show room salesmen; and a beverage distributor must hire a team of drivers and loaders. Thus, the adverse effect of appellee's termination on other employees is substantially less than when a manufacturer threatens to terminate a dealership.

Moreover, appellee has failed to establish that his termination will result in the loss or destruction of good will. *See Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755, 762–63 (2 Cir.1979) (loss of good will is an important factor in granting a preliminary injunction to a dealership threatened with termination). Unlike a dealership that builds up good will and a reputation for reliability, totally distinct from that of the manufacturer, appellee's good will was tied exclusively to his ability to convince his customers of the quality of appellant's woolen products. This is significantly different from the dealer whose customers will begin to "grumble" and go elsewhere if the dealer no longer carries a certain product because the manufacturer has terminated the dealership's contract. *See, e.g., Interphoto Corp. v. Minolta Corp.,* 417 F.2d 621 (2 Cir.1969).

Finally, and perhaps most important, is the nature of the territory which appellee serviced. Appellee's exclusive territory was the New York metropolitan area. Within that territory, appellee had no competition in the sale of appellant's merchandise. Upon appellee's termination, appellant brought in two replacement sales representatives to service the territory. If appellee should ultimately succeed on the merits of his underlying claim, he may regain his territory. Thus, during the pendency of this litigation appellee's territory is being continued and preserved for him.

Appellee's situation is in sharp contrast to that of a dealership which stands to lose its entire business to a competitor pending the outcome of litigation. *See Roso-Lino, supra,* 749 F.2d at 125–26. The threatened loss of an ongoing business to a competitor before there can be a final adjudication on the merits strongly suggests irreparable harm. Appellee has failed to demonstrate that such a danger exists in this case.

The only significant loss appellee might incur pending the outcome of the litigation is that his territory might become less profitable. Even if appellee were able to prove such an injury, however, such a loss would be compensable in money damages. Such loss is no different from the loss that any commissioned salesman would sustain upon termination.

It is well established that "irreparable injury means injury for which a monetary award cannot be adequate compensation". *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2 Cir.1979).

---

3. Although appellee sub-leased office space from appellant's New York office, appellee's obligations under the lease ceased upon his termination. In short, appellee has no long-term business obligations which extend beyond the termination of his association with appellant.

Likewise, where money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law. *Triebwasser & Kutz v. American Telephone & Telegraph Co.*, 535 F.2d 1356, 1359 (2 Cir.1976); *see* Mulligan, *Foreward, Preliminary Injunction in the Second Circuit,* 43 Brooklyn L.Rev. 831, 833 (1977) (showing of irreparable harm is fundamental and traditional requirement in any action where preliminary injunctive relief is sought).

### III.

To summarize:

We hold that, since appellee has failed to establish that he will sustain any loss which cannot be compensated by an award of money damages, the district court abused its discretion in finding irreparable harm and entering a preliminary injunction.

We reverse and vacate the injunction.