H. Price JESSUP, Linda Vaughn, Sally A. Kelly, Susan Owens, Annette Watkins and Nancy Hope Love, Plaintiffs,

v.

The AMERICAN KENNEL CLUB, INC. and The Labrador Retriever Club, Inc., Defendants.

No. 94 CIV 5215 (AGS).

United States District Court, S.D. New York.

Sept. 12, 1994.

Richard A. Gross, Rosenman & Colin, Washington, DC, Gilbert Edelson, Rosenman & Colin, New York City, for plaintiff.

Dale Christensen, Jr., Seward & Kissel, New York City, for defendant The American Kennel Club, Inc.

Donald B. Gould, Goodwin, Procter & Hoar, Boston, MA, Samuel Abate, Jr., Beatie, King & Abate, New York City, for defendant The Labrador Retriever Club, Inc.

## OPINION AND ORDER

SCHWARTZ, District Judge:

This is an action brought by six individuals on behalf of themselves and all other similarly situated owners, breeders and sellers of American Kennel Club, Inc. ("AKC") registered, pure-bred Championship Stock Labrador Retrievers (collectively, "Plaintiffs") who allege to have been and continue to be adversely affected as a result of The Labrador Retriever Club, Inc.'s ("LRC's") recommendation and the AKC's adoption of a new breed standard for the Labrador Retriever, that went into effect on March 31, 1994 (the "Revised Standard"). The Revised Standard is alleged, among other things, to adversely affect owners, breeders and sellers of dogs and bitches that deviate from the standard's height requirement. Plaintiffs allege that AKC and LRC (collectively, the "Defendants") violated antitrust laws and that LRC violated its fiduciary duty and N.Y. Not–For–

Profit Corp. Law § 717(a) (McKinney 1970 & Supp.1994). Plaintiffs move pursuant to Rule 65 of the Federal Rules of Civil Procedure for preliminary injunctive relief enjoining Defendants from implementing and/or enforcing the Revised Standard pending resolution of this action.

The Court has considered the substantial written submissions of the parties (including numerous affidavits and declarations) and the arguments of counsel at a hearing held on August 16, 1994 (the "Hearing"). For the reasons set forth below, Plaintiffs' request for preliminary injunctive relief is denied.

## FACTS

### A. The Parties

Plaintiffs are owners, breeders and sellers of AKC registered, pure-bred Championship Stock Labrador Retrievers allegedly adversely affected by the Revised Standard. Plaintiffs allege that as a result of the adoption and implementation of the Revised Standard they "will be eliminated in whole or in part from the market for the breeding and sale of Championship Stock Labrador Retrievers, and/or the breeding and sale of Championship Stock Show Dogs, and they have suffered and will continue to suffer substantial diminution in value of their Championship Stock Labrador Retrievers." Complaint at ¶ 10. Furthermore, Plaintiffs maintain that since numerous of their dogs and bitches no longer conform to AKC's standard, they can no longer effectively participate in AKC-sponsored dog shows or conformation events. Plaintiffs further maintain that the ability to conform to AKC's standards and to compete in conformation events is essential to the breeding and sale of Championship Stock Labrador Retrievers. Certain Plaintiffs, though not all, are members of the LRC. Plaintiffs bring this action individually and as class representatives; however, to date Plaintiffs have not moved for class certification. See Fed.R.Civ.P. 23.

The AKC is a not-for-profit corporation, organized under the laws of the State of New York. The AKC's chartered purposes include the adoption and enforcement of rules regulating and governing dog shows, and the advancement of the study, breeding, exhibit-

ing, running and maintenance of the purity of thoroughbred dogs. Pursuant to its charter, constitution and by-laws, the AKC approves the breed standards adopted by its member specialty clubs such as the LRC. AKC's Constitution provides that "[t]he standard of excellence of all breeds ... shall not be changed in any respect until the wording of any proposed change or changes first has been submitted to the Board of Directors of The American Kennel Club and its approval of the same has been obtained."

The LRC is a not-for-profit corporation organized under the laws of the State of New York. In its role as the Parent Club for the Labrador Retriever breed, it has, from time to time, adopted and submitted recommendations to the AKC relating to the Labrador Retriever breed standard. LRC's constitution provides that amendments to its breed standards must be approved by its members, and that such amendments only become effective after their approval by the Board of Directors of the AKC.

### B. *The Revised Standard*

Plaintiffs allege that the term " 'Championship Stock Labrador Retrievers' refers to those dogs that are registered with Defendant AKC and that, by reason of lineage, breeding program, physical and behavioral characteristics, and most importantly, conformance to the AKC standard of the breed, are titled under AKC rules and are able to compete and win in AKC-sanctioned conformation events held periodically at dog shows throughout the country". Plaintiffs further allege that, as a result of the foregoing, the demand for "Championship Stock Labrador Retrievers is sufficiently great to cause prices for such dogs to exceed, by several times, the prices for non-Championship Stock Labrador Retrievers".

Plaintiffs describe two categories of Labrador Retrievers: Show Dogs and Field Trial Dogs. Show Dogs, according to Plaintiffs, are comprised of two types of dogs (a) "Original" Labrador Retrievers (those owned, bred and sold by Plaintiffs), bred from blood lines established in England, and (b) "American" Labrador Retrievers (those owned, bred and sold by Plaintiffs' competitors), a narrower and taller version of the Labrador Retriever developed more recently in the United States. Field Trial dogs, according to Plaintiffs, are bred primarily from American Labrador Retrievers. Plaintiffs allege that more "Original" dogs are subject to disqualification under the Revised Standard than "American" Labrador Retrievers.

Plaintiffs allege that annual sales of Show Dogs is in excess of $8,000,000. According to Defendants, the Labrador Retriever is currently the most popular breed of dog in the United States.

A height standard has been in place for Labrador Retrievers since 1945. The standard is, as it has been for almost five decades, that adult male Labrador Retriever dogs are to be 22.5 to 24.5 inches tall at the shoulder, and adult females are to be 21.5 to 23.5 inches tall. Plaintiffs do not dispute the previous existence of height standards but, argue that "[t]he height statement in the standard previously in effect was never even 'recommended' or described as 'ideal'—it was merely provided at the end of the standard without any comment on the desirability of any particular height." Plaintiffs' Reply Memorandum at 9 (citing Affidavit of Joan Redmond Read[1] dated June 22, 1994 ("Read Affidavit") at ¶ 5). Moreover, Plaintiffs argue that the previous standards were not enforced. *See* Affidavit of David Walter Schnare, past President and current Director of the Labrador Retriever Club of the Potomac dated June 23, 1994 ("Schnare Affidavit") at ¶ 7; Read Affidavit at ¶ 5. The LRC concedes that "Labrador Retrievers of varying heights (including those below and above the designated height standards) have competed and won prizes in AKC-sanctioned confirmation events" prior to the effective date of the Revised Standard.

The Revised Standard was implemented effective March 31, 1994. The Revised Standard, while maintaining the requirement that

---

**1.** Ms. Read's Affidavit states, among other things, that she has "bred and/or judged Labrador Retrievers in the United States for six decades" and that she is "a licensed AKC specialty judge of the retrieving breeds." Read Affidavit at ¶ 2.

adult male Labrador Retriever dogs are to be 22.5 to 24.5 inches tall at the shoulder, and adult females are to be 21.5 to 23.5 inches tall, provides a penalty (where previously there was none) for dogs falling outside the height requirement. Under the Revised Standard, any dog deviating from the height requirement by more than 1/2 inch is subject to disqualification when competing at a conformation event.

It is not disputed that LRC, after a vote of its members, adopted the Revised Standard and that the Board of Directors of the AKC subsequently approved that standard. Defendants contend that two valid votes of LRC's members were conducted by a private accounting firm and that those votes were in full compliance with LRC's and AKC's rules and regulations. Plaintiffs, however, allege certain improprieties in the conduct of the votes and further that LRC's membership was not informed of the implications of the Revised Standard's height range prior to the vote. Plaintiffs also state that "a survey of the LRC membership, provided to the AKC well before its adoption of the Revised Standard, established that of the 423 respondents, seventy-eight percent (78%) indicated that they would like the Revised Standard withdrawn, which represents the opinion of fifty-seven percent of the total LRC membership." Plaintiffs' Reply Memorandum of Law at 8 (citing Schnare Affidavit at ¶ 21); *see also* Schnare Affidavit at ¶¶ 22–23 (describing letters sent to AKC in opposition to the Revised Standard).

According to LRC "[t]he principal reason that this disqualification was added in the revised standard was a concern that had increased over a period of years that certain breeders and judges had increasingly disregarded the height ranges set forth in the breed standard with the consequence that championships were being awarded to Labradors that did not meet the long specified height ranges." Affidavit of Frances O. Smith, member and Director of LRC, sworn to June 17, 1994 at ¶ 5. Defendants further argue that height standards for dogs are not exceptional. Plaintiffs do not challenge that "nearly 100 AKC breeds contain recommended height standards. All 24 breeds of

sporting dogs have a recommended height; 6 breeds among the sporting breeds have a height disqualification . . . twenty-nine AKC-registered breeds contain height disqualifications, including the Golden Retriever (males disqualified if under 22″ or over 25″; females to be disqualified if under 20–1/2″ or over 23–1/2)." Affidavit of William Edward Stacy, AKC Senior Vice President, Events, sworn to June 16, 1994 ("Stacy Affidavit") at ¶ 17.

AKC characterizes the effects of the Revised Standard as follows:

> *All* dogs previously registered as Labrador Retrievers with the AKC are still registered, and will continue to be entitled to compete in dog shows. Dogs that already are champions will continue to be entitled to call themselves champions. The standard is solely used to judge Labrador Retrievers seeking to win championships based on their conformity to the breed standard at dog shows. Any dog that is "disqualified" at a show will *still be registered* as a purebred dog and entitled to be used as a breeding dog whose offspring could be registered as pure-bred Labrador Retrievers. Indeed, only after three disqualifications would a too short or too tall dog be disqualified from competing at future dog shows.

Despite Defendants' attempt to minimize the impact of the Revised Standard, under this standard, (1) dogs and bitches which fail the height standards if not previously qualified as a Champion, will no longer be able to become a Champion, and (2) if a Champion dog or bitch is disqualified at three competitions, it will no longer be able to compete. Plaintiffs argue that the above quoted passage (by focusing on registration) illustrates that the Defendants misunderstand (and minimize) their injury: they are in the business of breeding and selling *Championship Stock Labrador Retrievers.*

The effect of the Revised Standard is also disputed. Plaintiffs argue that at the 1993 Labrador Retriever Club of the Potomac Specialty Show they conducted a study of 341 dogs. Of those dogs measured, 69% of the AKC champion Labrador Retriever bitches and 43% of the AKC champion Labrador Retriever dogs fell outside the range of the

Revised Standard. Schnare Affidavit at ¶ 11. Moreover, the disqualification rate at shows since the implementation of the Revised Standard has, according to Plaintiffs, increased significantly. *See* Schnare Affidavit at ¶ 13 ("at a show on April 9, 1994 of 59 dogs exhibited, eleven were disqualified at a rate of 18.6%. Of adult bitches, nine of 23 were disqualified under the Revised Standard, a rate of 39%, seven of which were disqualified for height alone"). In fact, Plaintiffs argue that the disqualification rate would be higher but for the fact that exhibitors refrained from entering their dogs out of fear of disqualification. *Id.*

Defendants, in contrast, argue that the Revised Standard has had no discernible effect. Defendants maintain that in the 135 all-breed events, in which 2,332 Labrador Retrievers were entered between March 31 and April 30, 1994, only 8 dogs (less than 1%) were disqualified because of height. Stacy Affidavit at ¶ 21. Similarly, at a Labrador Retriever specialty conformation event held on April 14 and April 15, 1994, where 434 Labrador Retrievers participated, only 14 were disqualified (about 3%). *Id.* Defendants also argue that this number is inflated because the short, broad Labrador Retrievers were deliberately entered in the show in order to manufacture evidence of damage to Plaintiffs. *Id.*

Defendants further challenge Plaintiffs' allegations that as a result of the Revised Standard the "supply of Championship Stock Labrador Retrievers will necessarily shrink, and, the demand for dogs that will remain qualified to compete under the Revised Standard will necessarily increase, with a concomitant increase in price." Complaint at ¶ 28. In fact, Defendants' expert, Jerry A. Hausman, a Professor of Economics at the Massachusetts Institute of Technology, concludes that price will not be affected because supply can easily be adjusted by the expedient of more frequent breeding of Labrador Retrievers. Affidavit of Jerry A. Hausman dated June 20, 1994 at ¶¶ 5–11; *see also* Smith Affidavit at ¶ 7 (attesting to the fact that supply will be adequate and consequently price will not increase); *but see* Schnare Affidavit at ¶ 18 (stock necessary to breed

Championship Stock Labrador Retriever is difficult to obtain at any price).

Additionally, the parties vigorously dispute the ease with which complying litters can be bred. Defendants contend that "height-disqualified dogs could easily be breed to taller (or shorter) dogs, and in 63 days a litter of dogs will result that likely will contain some taller (or shorter) conforming offspring at maturity." Stacy Affidavit at ¶ 23; *see also* Smith Affidavit at ¶ 8 ("the height of Labradors is one of the easiest characteristics to modify through a breeding program"). Plaintiffs argue that Defendants' assertion that their injury can be eliminated by breeding a new line of Championship Stock Labrador Retrievers in 63 days is erroneous: breed lines, according to Plaintiffs, cannot be altered in one generation and, moreover, the second and third generations of dogs usually return to the size of the original stock. *See* Read Affidavit at ¶ 7; Schnare Affidavit at ¶¶ 17–18.

### C. *Allegations of Antitrust Violations and Irreparable Injury*

Plaintiffs allege that their "competitors conspired amongst themselves to cause Defendant Labrador Retriever Club, Inc. ("LRC") to recommend, and Defendant American Kennel Club, Inc. ("AKC") to adopt, a new breed standard for the Labrador Retriever ... that has had the effect of excluding large numbers of dogs that are currently bred and sold by members of the Plaintiff Class but not those bred and sold by Plaintiffs' competitors." Complaint at ¶ 1; *see also* Complaint at ¶ 26 ("In recent years, a faction within the LRC that includes owners, breeders and sellers of the American Labrador Retriever has attempted to rewrite the standard to exclude the shorter and broader Original Labrador Retriever. This faction competes with the members of the Plaintiff Class in the relevant market").

With respect to irreparable injury, Plaintiffs maintain that they "have submitted ample evidence through numerous affidavits in which owners and breeders of Original Championship Stock Labrador Retrievers have sworn, under penalty of perjury, that absent injunctive relief they will be forced

out of the breeding business entirely." Plaintiffs' Supplemental Memorandum of Law at 2; *see also* Plaintiffs' Memorandum of Law at 7–8. Plaintiffs further argue that "[w]ithout the ability to obtain championship status for their dogs, breeders who have spent years developing a reputation for producing championship lines will lose that reputation along with the good will they have painstakingly developed with their customers." Plaintiffs' Supplemental Memorandum of Law at 3; *see also* Plaintiffs' Reply Memorandum of Law at 10. Further, Plaintiffs argue that injunctive relief is appropriate because "[i]t is already inherently difficult to estimate the adverse impact on potential sales of puppies and demand for stud services under the Revised Standard." Plaintiffs' Supplemental Memorandum of Law at 6.

Defendants vigorously dispute the allegations in the Complaint and assert various defenses, including failure to state a claim. Defendants oppose Plaintiffs' request for injunctive relief on several theories, including that (1) Plaintiffs' injuries are self inflicted (because they have refused to breed conforming dogs) and are not irreparable, (2) Defendants are likely to prevail on the merits, and (3) the balance of hardships tip in Defendants' favor. Notably, Defendants characterize Plaintiffs' action as an aesthetic disagreement with the 1945 standard for Labrador Retrievers.

## D. *Previous Proceedings*

This action was commenced on May 27, 1994 in the Eastern District of Virginia. At a hearing on July 6, 1994, the Honorable Claude M. Hilton granted Defendants' motion to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404.

The preliminary injunction motion was filed in the Eastern District of Virginia on June 6, 1994. The parties filed supplemental memoranda of law addressing Second Circuit law with respect to injunctive relief on August 5, 1994. A hearing on Plaintiffs' motion was held on August 16, 1994.

## DISCUSSION

In order to obtain a preliminary injunction in this Circuit, the applicant must show:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Deeper Life Christian Fellowship, Inc. v. Board of Education,* 852 F.2d 676, 679 (2d Cir.1988) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). Furthermore, "[i]t is well established that 'irreparable injury' means injury for which a monetary award cannot be adequate.'" *Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917 (2d Cir.1986) (quoting *Jackson Dairy,* 596 F.2d at 72). "Likewise, where money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law." *Id.* (citations omitted). Significantly, the "Second Circuit has intimated that a disruption in business does not constitute irreparable harm." *Truglia v. KFC Corp.,* 692 F.Supp. 271, 279 (S.D.N.Y.1988), *aff'd,* 875 F.2d 308 (2d Cir.1989) (citing *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755 (2d Cir.1979); *Jackson Dairy, Inc.,* 596 F.2d 70). Furthermore, "a preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 80 (2d Cir.1990) (citations omitted). In this Circuit, a party seeking preliminary injunctive relief must show a *likelihood* of irreparable injury, not a *possibility* of irreparable injury, and "[l]ikelihood sets, of course, a higher standard than 'possibility'". *Id.* at 79.

Plaintiffs' request for preliminary injunctive relief is not supported by the facts or the governing law. Indeed, Plaintiffs mischaracterize their own Owens, Jessup, Watkins and Price affidavits (collectively, the "Affidavits"). Those affidavits, which are substantially similar, discuss a 66%, 25% (more for puppies), 50% (at least) and $8,000

decline, respectively, in the value of the affiants present stock. Owens and Jessup, whose activities include stud services, state that if "the Revised Standard remains in effect, my stud services business will suffer dramatically, *possibly* forcing me out of business." Jessup and Owens Affidavits at ¶ 6 (emphasis added). Plaintiffs repeatedly assert that the reputation necessary to compete in the market for breeding cannot be established overnight and that Championship Stock Labrador Retrievers are produced from breeders who have spent decades developing their breeding programs and reputations. Conspicuously absent from the Affidavits, however, is the height of the affiants' existing dogs and bitches and any discussion of the timing of when the destruction to their business and/or their reputation would occur. Moreover, Plaintiffs, by their own admission, concede that, at most, 69% of AKC champion Labrador Retriever bitches and 43% of AKC champion Labrador Retriever dogs would fall below the height requirements—this does not amount to a total destruction in business. Schnare Affidavit at ¶ 11.

The law in this Circuit requires Plaintiffs to show a *likelihood* of irreparable injury, not a *possibility* of irreparable injury, and "[l]ikelihood sets, of course, a higher standard than 'possibility' ". *JSG Trading Corp.,* 917 F.2d at 79. Plaintiffs' evidence and arguments that they will suffer "possible" irreparable harm is of no legal moment. *See, e.g.,* Jessup and Owens Affidavits (quoted above); Hearing Transcript at 82 ("The Second Circuit says *possible* irreparable injury. The breeders say I am *possibly* going out of business") (emphasis added); Hearing Transcript at 19, 77 (same). After reviewing the Affidavits, the Court is not persuaded as a matter of fact that there is a *likelihood* of irreparable injury to Plaintiffs as opposed to a more remote *possibility.*

The Court further finds that the evidence submitted does not reflect loss of goodwill or destruction of business sufficient to support a finding of likelihood of irreparable injury. There is no imminent threat to Plaintiffs' business as a whole (as opposed to a temporary or partial disruption). *See Jack Kahn Music,* 604 F.2d 755 (threat has to be immi-

nent and rejecting loss of goodwill as a basis for injunctive relief where, among other things, entire business not destroyed); *Truglia v. KFC Corp.,* 692 F.Supp. at 279 ("loss or destruction of an entire business has also widely been held to constitute irreparable harm, at least when the business has been in operation for some time") (citations omitted). Plaintiffs' stock, by their own admission, will retain significant value. For example, Ms. Vaughn states that "[t]he estimated value of my current stock is $75,000" and that the Revised Standard has "reduced the value of my present stock by at least $8,000." Vaughn Affidavit at ¶¶ 1, 4. Similarly, Plaintiffs admit that a significant percentage of AKC champion Labrador Retriever dogs and bitches are unaffected by the Revised Standards.

Moreover, the Court concludes that Plaintiffs' Affidavits and arguments as well as statements of Plaintiffs' counsel demonstrate that Plaintiffs' damages, if any, are quantifiable in terms of lost future profits; thus, there is no irreparable injury necessitating preliminary injunctive relief. *See Loveridge v. Pendleton,* 788 F.2d at 917; *Jackson Dairy,* 596 F.2d at 72 ("For it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages is adequate compensation a preliminary injunction will not issue").

█ Additionally, here Plaintiffs seek to enjoin the use of the new standards, which are already in effect, and to restore the former standards. Movants, such as Plaintiffs, seeking a mandatory preliminary injunction, undoing the status quo, are subject to a heightened standard of proof. *See SEC v. Unifund SAL,* 910 F.2d 1028, 1039 (2d Cir.1990) ("plaintiffs have been put to a more rigorous burden in obtaining preliminary injunctions that order some form of mandatory relief"); *Christian v. New York State Board of Law Examiners,* 1994 WL 62797, 1994 U.S.Dist. LEXIS 1876 (S.D.N.Y. Feb. 18, 1994) (same). Plaintiffs have not met that heightened standard.

The Court, having found that Plaintiffs have not demonstrated irreparable injury, need not address the issue of likelihood of

success on the merits or the balance of hardships. *See Reuters Ltd. v. United Press Int'l Inc.*, 903 F.2d 904, 907 (2d Cir.1990) ("Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction ... the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered") (citations omitted) (internal quotations omitted). Nevertheless, the Court observes that the merits of Plaintiffs' claims, in particular their antitrust claims are, at best, weak. Plaintiffs' antitrust causes of action, as discussed above, are predicated upon an alleged conspiracy among Plaintiffs' competitors who are said to have caused LRC to recommend and AKC to adopt the Revised Standard. Neither the Complaint, nor the affidavits submitted in support of the instant motion, identify or refer to specific acts or activities suggesting any illegal agreement or concerted action by Defendants. Although reference is made to certain individuals connected with LRC and AKC, no concerted action is identified that would support a finding of illegal action. Moreover, the record is bereft of any evidence or allegation of illegal conduct by AKC. Indeed, the Court has reservations concerning whether (1) a conspiracy has been adequately pled and, if adequately pled, whether a conspiracy can be proved, (2) certain of Plaintiffs' causes of action may be maintained against LRC and/or AKC since neither entity competes with Plaintiffs, and (3) there is harm to competition and/or an effect on the price of Championship Stock Labrador Retrievers as a result of the Revised Standard.

With respect to the balance of hardships, the Court observes that the relief requested by Plaintiffs would deprive Defendants of their ability to regulate the sport of purebred dogs and to define purebred conformity standards. Significantly, Defendants' experience and expertise in the area of purebred dogs is unchallenged. In the absence of a clear showing of irreparable injury and likelihood of success on the merits, the Court resists the suggestion that it should undertake to interfere with the conduct of the affairs of these sanctioning organizations and to substitute its judgment concerning matters affecting purebred dogs. Moreover, the Court finds that the relief requested by Plaintiffs, prior to an adverse determination on the merits, would pose hardship to Defendants and that their credibility as sanctioning organizations would be undermined. Courts have recognized that injury to a sanctioning body's authority and reputation is sufficient to deny injunctive relief. *See Heldman v. U.S. Lawn Tennis Ass'n*, 354 F.Supp. 1241, 1252 (S.D.N.Y.1973) (in denying preliminary injunction against USLTA, Judge Pollack observed "[i]t would unduly damage the prestige and the operation of the USLTA to enjoin its rules before an adverse determination on the merits").

*CONCLUSIONS*

For the reasons set forth above, Plaintiffs' request for preliminary injunctive relief is denied. The parties are directed to appear for a pre-trial conference on September 21, 1994 at 9:00 a.m. in Courtroom 2703. The parties shall be prepared to discuss, among other things, the timing of a class certification motion and a discovery schedule.

SO ORDERED.